AUG 27 2026 PM2:51
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA 8:26-cv-2520-JLB-CPT

TAMPA DIVISION

CAPTAIN MARK JOHNSON,

Plaintiff,

v.

TOTAL MILITARY MANAGEMENT, INC.,

COLEMAN AMERICAN MOVING SERVICES, INC., and

ARMSTRONG TRANSFER AND STORAGE COMPANY INC. NASHVILLE TENNESSEE, d/b/a ARMSTRONG RELOCATION NASHVILLE TENNESSEE,

Defendants.

Case No. ______________________

COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff's Claim Under the Carmack Amendment, 49 U.S.C. § 14706

Plaintiff, Captain Mark Johnson, proceeding pro se, sues Defendants Total Military Management, Inc. ("TMM"), Coleman American Moving Services, Inc. ("Coleman"), and Armstrong Transfer and Storage Company Inc. Nashville Tennessee, d/b/a Armstrong Relocation Nashville Tennessee ("Armstrong"), and alleges as follows:

I. PARTIES



pd 405
TPA-74802

1. Plaintiff Captain Mark Johnson is an active-duty officer in the United States Navy. Plaintiff's current mailing address is 1043 Union Street, Clearwater, Florida 33755.
2. Defendant Total Military Management, Inc. ("TMM") was involved in arranging, managing, administering, and/or adjudicating Plaintiff's military household-goods shipment. TMM subsequently reviewed and denied Plaintiff's claim for loss and damage.
3. Defendant Coleman American Moving Services, Inc. ("Coleman") had custody and possession of Plaintiff's household goods for storage and was responsible for the subsequent handling and final delivery of Plaintiff's household goods to Plaintiff's residence in Clearwater, Florida.
4. Defendant Armstrong Transfer and Storage Company Inc. Nashville Tennessee, doing business as Armstrong Relocation Nashville Tennessee ("Armstrong"), was the carrier that picked up Plaintiff's household goods at the origin location and was responsible for transportation of Plaintiff's household goods as part of the interstate military household-goods shipment.
5. Armstrong assumed possession, custody, and control of Plaintiff's household goods at pickup and transported the household goods as part of the interstate transportation of the shipment.
6. Coleman subsequently assumed possession and custody of Plaintiff's household goods for storage and related handling and ultimately delivered

the household goods to Plaintiff's residence in Clearwater, Florida, on October 3, 2023.

7. Plaintiff presently lacks access to all contracts, Government Bills of Lading, transportation records, storage records, custody records, inventory records, carrier records, and other documents necessary to determine every aspect of the contractual and legal relationship among TMM, Armstrong, Coleman, and the other entities participating in the shipment.

8. Plaintiff alleges the relevant roles of Defendants based upon the records presently available to him and seeks discovery of the complete transportation and storage records necessary to establish the precise responsibility of each Defendant.

9. Plaintiff alleges that Armstrong and Coleman were transportation providers and carriers involved in the receipt, transportation, storage-related handling, and/or final delivery of Plaintiff's household goods and that each is legally responsible under the Carmack Amendment to the extent the evidence establishes that Plaintiff's loss or damage occurred while the goods were within that Defendant's possession, custody, control, or responsibility.

## II. JURISDICTION

10. This action arises under the Carmack Amendment, 49 U.S.C. § 14706.

11. This Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a).

12. The amount in controversy exceeds $10,000, exclusive of interest and costs.

13. Plaintiff's original household-goods claim sought approximately $58,568 for loss, destruction, and damage to his household goods.

14. Plaintiff seeks recovery of the unpaid portion of his legally recoverable loss and damage after credit for amounts already paid through the Navy Military Claims Office ("MCO") and amounts subsequently recovered from Defendants on Plaintiff's behalf.

15. Plaintiff received $23,560 through the Navy Military Claims Office process.

16. In approximately July 2026, an additional $236.20 was recovered from the TSP in connection with the underlying household-goods claim.

17. After crediting the $23,560 MCO payment and the additional $236.20 recovered from the TSP, Plaintiff presently calculates the remaining unpaid portion of his original $58,568 claim to be approximately $34,771.80, subject to proof of individual losses, valuation, and any additional credits required by law.

III. VENUE

18. Venue is proper in this District because Plaintiff's household goods were ultimately delivered to Plaintiff's residence in Clearwater, Florida, in Pinellas County, within the Tampa Division of the Middle District of Florida.

19. Coleman had possession and custody of Plaintiff's household goods and ultimately delivered the goods to Plaintiff's Clearwater residence on October 3, 2023.

20. Armstrong picked up Plaintiff's household goods at the origin location and was responsible for transportation of the goods as part of the interstate shipment.

21. A substantial portion of the facts giving rise to this action occurred in or is connected with the Tampa Division of the Middle District of Florida, including the final delivery of Plaintiff's household goods and the discovery of the loss and damage.

IV. THE MILITARY HOUSEHOLD-GOODS SHIPMENT

22. Plaintiff was an active-duty member of the United States Navy and was entitled to a government-funded military relocation of his household goods.

23. Plaintiff's shipment was assigned Government Bill of Lading No. BGNC0517879.

24. Armstrong Transfer and Storage Company Inc. Nashville Tennessee picked up Plaintiff's household goods at the origin location.

25. Armstrong assumed possession, custody, and control of Plaintiff's household goods at pickup and transported the household goods as part of the interstate military household-goods shipment.

26. At the time of pickup, the Armstrong pickup driver marked every item on the shipment as damaged or otherwise recorded every item as having damage.

27. The Armstrong pickup driver did not provide Plaintiff with inventory sheets or other inventory documentation for Plaintiff to review and verify the alleged condition of the household goods at pickup.

28. Plaintiff was therefore not provided a meaningful opportunity at pickup to review, verify, dispute, or correct the pickup driver's markings concerning the alleged condition of the household goods.

29. Plaintiff disputes that the pickup driver's blanket markings accurately established the actual pre-existing condition of Plaintiff's household goods.

30. Plaintiff alleges that marking every item as damaged, without providing. Plaintiff with inventory sheets for review and verification, does not establish that the substantial loss and damage ultimately discovered at final delivery was pre-existing.

31. Plaintiff's household goods were subsequently placed into storage and remained within the government-authorized military transportation and storage arrangement.

32. Coleman subsequently had possession and custody of Plaintiff's household goods for storage and related handling.

33. Coleman ultimately delivered Plaintiff's household goods to Plaintiff's residence in Clearwater, Florida, on October 3, 2023.

34. Upon and/or following delivery on October 3, 2023, Plaintiff discovered substantial loss, destruction, and damage to his household goods.

35. Plaintiff timely submitted a claim for the loss and damage within the applicable claims period.

36. Plaintiff's original claim sought approximately $58,568 in damages based upon the loss, destruction, and/or damage to his household goods and the replacement value of those goods.

V. TMM'S AUGUST 27, 2024 CLAIM DETERMINATION

37. On August 27, 2024, TMM issued Plaintiff a written claim determination concerning Government Bill of Lading No. BGNC0517879.

38. TMM's letter stated that the shipment had allegedly been delivered into a destination warehouse on April 4, 2022.

39. TMM's letter further stated that the shipment allegedly "converted to member's expense" on October 1, 2022.

40. Based upon that alleged conversion, TMM asserted that the presumption of liability for loss and damage had shifted from the carrier to the warehouse.

41. TMM consequently denied liability for numerous items in Plaintiff's claim.

42. TMM's letter directed Plaintiff to file his claim with the warehouse or destination claims office.

43. Plaintiff disputes TMM's factual premise that his household goods converted to member-paid storage on October 1, 2022.

VI. THE HOUSEHOLD GOODS REMAINED IN GOVERNMENT-FUNDED STORAGE THROUGH DELIVERY, AND NO STORAGE COST TRANSFERRED TO PLAINTIFF

44. Plaintiff's household goods entered storage in transit (SIT) on or about April 4, 2022.

45. Plaintiff's household goods remained in government-authorized, government-funded storage continuously until they were delivered to Plaintiff's residence in Clearwater, Florida, on October 3, 2023.

46. An automated notice generated in the Defense Personal Property System (DPS) on or about October 1, 2022 indicated that the shipment had "converted to member's expense." That automated notice was generated in connection with an expiring prior set of orders (Order #1770).

47. At the time of that automated notice, Plaintiff's storage was authorized under a new set of orders (Order #2432), which authorized continued storage in transit at government expense.

48. Notwithstanding the automated system notice, the Government continued to authorize and fund the storage of Plaintiff's household goods, and no storage cost was ever transferred to, billed to, or paid by Plaintiff.

49. Plaintiff was never contacted to pay for storage, never entered into any personal or member-paid storage arrangement, and never assumed personal financial responsibility for the storage of his household goods at any time before delivery.

50. The Government paid for all 546 days of storage in transit and for the delivery of Plaintiff's household goods from storage. Because the transportation service provider was paid for the entire storage period and delivery, there was no break in the transportation provider's coverage or responsibility for the shipment.

51. Any system status reflecting a "conversion to member's expense" did not correspond to any actual transfer of financial responsibility to Plaintiff and did not interrupt the government-funded status of the storage.

52. The delivering transportation service provider's denial rested on the premise that, upon the automated conversion status, the presumption of liability shifted from the carrier to the warehouse. That premise does not defeat the fact that government funding of the storage, and payment to the transportation service provider, continued uninterrupted through delivery.

53. Following delivery, the transportation service provider's administrator (TMM) acknowledged in writing, on or about September 3, 2024, that storage was covered through the delivery date, and inquired whether Plaintiff wished for TMM's claims department to process the claim or to transfer the claim to the Military Claims Office.

54. The circumstances of the storage, the continued government funding through delivery, and the transportation service provider's payment for the full storage period are material to determining which entity remained legally responsible for Plaintiff's household goods during the period in which the loss and damage occurred.

55. Plaintiff possesses documentary evidence supporting the allegations in this section and will produce that evidence in accordance with the Federal Rules of Civil Procedure and any applicable scheduling order.

VII. THE NAVY MILITARY CLAIMS PROCESS

66. After TMM's determination, Plaintiff transferred his claim to the appropriate Navy Military Claims Office ("MCO").

67. The MCO subsequently paid Plaintiff $23,560 under the military claims process.

68. The MCO payment did not reimburse Plaintiff for the full replacement value of the loss and damage reflected in Plaintiff's $58,568 claim.

69. The MCO thereafter pursued additional recovery from TMM in connection with the same underlying household-goods claim.

70. In approximately July 2026, Plaintiff received written notice from the Government that an additional $236.20 had been recovered from the TSP.

71. Plaintiff did not receive from TMM a new claim determination, settlement offer, explanation, or written disallowance accompanying that $236.20 payment.

72. The July 2026 payment was not presented by TMM to Plaintiff as a new settlement or reconsideration of Plaintiff's claim.

73. The additional $236.20 recovered from the TSP did not compensate Plaintiff for the substantial remaining loss and damage to his household goods.

74. Plaintiff seeks appropriate credit for all amounts actually paid or recovered on his behalf, including the $23,560 MCO payment and the additional $236.20 recovered from the TSP.

## VIII. CARMACK AMENDMENT LIABILITY

75. Plaintiff incorporates the preceding paragraphs as though fully set forth herein. The Carmack Amendment, 49 U.S.C. § 14706, governs the liability of carriers for loss of or damage to property transported in interstate commerce.

76. Plaintiff's household goods were transported as part of an interstate military household-goods shipment under Government Bill of Lading No. BGNC0517879.

77. Armstrong was the carrier that received and picked up Plaintiff's household goods at the origin location and assumed possession, custody, and control of the household goods for transportation.

78. Armstrong was responsible for the pickup, loading, handling, and transportation of Plaintiff's household goods from the origin location as part of the interstate transportation of the shipment.

79. Armstrong thereafter transported Plaintiff's household goods through the interstate transportation chain.

80. Coleman subsequently assumed possession and custody of Plaintiff's household goods for storage and related handling and ultimately delivered

the household goods to Plaintiff's residence in Clearwater, Florida, on October 3, 2023.

81. Armstrong and Coleman were the actual transportation and delivery carriers involved in the movement and delivery of Plaintiff's household goods, respectively, and each assumed responsibility for the goods during the portion of the shipment within its possession, custody, control, and responsibility.

82. Plaintiff alleges that the goods were entrusted to Armstrong for interstate transportation and were ultimately delivered by Coleman with substantial loss, destruction, and damage.

83. Plaintiff alleges that the household goods were in substantially better condition when entrusted to the transportation chain than the condition in which substantial portions of the goods were delivered to Plaintiff on October 3, 2023, except for any specific pre-existing damage that can be established through reliable contemporaneous evidence.

84. The Armstrong pickup driver's marking of every item as damaged does not, by itself, establish the actual pre-existing condition of Plaintiff's household goods.

85. The pickup driver did not provide Plaintiff with inventory sheets for review or verification, preventing Plaintiff from confirming whether the driver's

blanket damage markings accurately described the condition of any particular item.

86. Plaintiff specifically disputes any contention by Armstrong or Coleman that the substantial loss, destruction, and damage discovered at final delivery was all pre-existing merely because the Armstrong pickup driver marked every item as damaged.

87. Plaintiff alleges that Armstrong, as the carrier that received and transported the household goods, was responsible under the Carmack Amendment for loss or damage occurring while the goods were within Armstrong's possession, custody, control, or responsibility.

88. Plaintiff further alleges that Coleman, as the carrier and transportation provider that assumed custody of the household goods for storage-related handling and ultimately delivered the goods to Plaintiff, was responsible under the Carmack Amendment for loss or damage occurring while the goods were within Coleman's possession, custody, control, or responsibility.

89. Plaintiff alleges that the loss, destruction, and damage to his household goods occurred during the period in which the goods were within the possession, custody, control, or responsibility of Armstrong and/or Coleman.

90. Plaintiff timely presented his claim for the loss and damage.

91. Plaintiff's original claim sought approximately $58,568 in damages for the loss, destruction, and damage to his household goods.

92. Plaintiff has received $23,560 through the Navy Military Claims Office process and an additional $236.20 was subsequently recovered from the TSP in connection with the underlying claim.

93. Plaintiff seeks recovery of the remaining legally recoverable loss and damage after all appropriate credits.

94. Plaintiff alleges facts sufficient to establish that the household goods were entrusted to transportation carriers, that the goods were ultimately delivered with substantial loss, destruction, and damage, and that Plaintiff suffered a specified monetary loss.

95. To the extent Armstrong contends that any particular item was already damaged before Armstrong received it, Armstrong should be required to identify the specific item, the alleged pre-existing damage, the contemporaneous inventory documentation supporting that contention, and the basis upon which Armstrong recorded the item as damaged.

96. To the extent Coleman contends that any particular item was already damaged before Coleman received it, Coleman should be required to identify the specific item, the alleged pre-existing damage, the contemporaneous inventory documentation supporting that contention, and the records establishing the condition of the item when Coleman received it.

97. Plaintiff specifically disputes any blanket contention that all loss, destruction, or damage identified at final delivery was pre-existing merely because the Armstrong pickup driver marked every item as damaged.

98. Plaintiff further alleges that the lack of inventory sheets provided to Plaintiff at pickup materially limits the reliability and completeness of any claim that the condition markings made by the pickup driver accurately established the pre-existing condition of the household goods.

99. Plaintiff alleges that the carriers' records concerning the pickup, transportation, storage, custody, handling, inspection, and final delivery are necessary to determine the condition of the household goods at each stage of the shipment.

100. Plaintiff seeks discovery of Armstrong's complete pickup, inventory, transportation, custody, loading, unloading, and delivery records, including all inventory sheets, electronic inventory records, photographs, driver notes, condition codes, damage notations, bills of lading, shipping documents, warehouse records, and communications concerning Plaintiff's shipment.

101. Plaintiff seeks discovery of Coleman's complete storage, custody, handling, transportation, unloading, and final-delivery records, including warehouse receipts, inventory records, condition reports, photographs, inspection records, damage reports, delivery documents, driver notes, and communications concerning Plaintiff's shipment.

102.Plaintiff alleges that Armstrong and Coleman are each responsible under the Carmack Amendment to the extent the evidence establishes that Plaintiff's loss or damage occurred while the household goods were in that Defendant's possession, custody, control, or responsibility.

103.Plaintiff further alleges that the applicable transportation and storage records will establish the respective periods during which Armstrong and Coleman possessed, controlled, transported, stored, handled, and delivered Plaintiff's household goods.

104.Plaintiff presently lacks access to the complete transportation and storage records necessary to determine the precise point at which each individual item was lost, destroyed, or damaged.

105.Plaintiff therefore pleads that Armstrong and Coleman are each liable to the extent established by the evidence and applicable law for loss or damage occurring during the period in which each Defendant had possession, custody, control, or responsibility for Plaintiff's household goods.

106.Plaintiff requests discovery and production of the complete Government Bill of Lading, all carrier bills of lading, pickup and delivery inventories, warehouse records, storage records, custody records, transportation records, photographs, inspection records, claims records, and all other documents necessary to determine the condition and location of Plaintiff's household goods at each stage of the shipment.

107.Plaintiff further requests discovery concerning the Government's authorization and payment of storage, including all records relating to the alleged October 1, 2022 conversion to member expense.

108.Plaintiff alleges that the Government-funded status of the storage continued after October 1, 2022 and that no valid conversion to member-paid storage occurred.

109.Plaintiff alleges that the Government-funded status of the storage is material to determining whether the household goods remained within the transportation and storage responsibility of the carriers and transportation providers rather than becoming Plaintiff's personal storage property or personal storage responsibility.

110.Plaintiff seeks judgment against Armstrong and Coleman, individually and to the extent permitted by applicable law, for the portion of Plaintiff's proven loss and damage for which each Defendant is legally responsible under the Carmack Amendment.

## IX. STATUTE OF LIMITATIONS

112.Plaintiff incorporates the preceding paragraphs as though fully set forth herein.TMM issued its written claim determination on August 27, 2024.

113.Under the Carmack Amendment, a civil action may be brought within two years from the date on which the carrier gives written notice of disallowance of the claim. 49 U.S.C. § 14706(e).

114.Plaintiff files this action before August 27, 2026, and therefore within two years of TMM's August 27, 2024 written determination.

115.Plaintiff's action is timely.

X. DAMAGES

125.Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

126.Plaintiff's original claim sought approximately $58,568 in damages.

127.The original $58,568 claim was based upon the loss, destruction, damage, and replacement value of Plaintiff's household goods.

128.Plaintiff received $23,560 through the Navy Military Claims Office process.

129.The Government subsequently recovered an additional $236.20 from the TSP in connection with the same underlying claim.

130.Plaintiff gives credit for the $23,560 MCO payment and the additional $236.20 recovered from the TSP.

131.Based upon the original claim amount of $58,568, less the $23,560 MCO payment and less the additional $236.20 recovered from the TSP, Plaintiff presently calculates the remaining unpaid amount at approximately $34,771.80.

132.Plaintiff seeks the full amount of his legally recoverable loss and damage established by the evidence, subject to all appropriate credits and any

determination by the Court concerning the legal effect of the payments already received or recovered.

133.Plaintiff presently estimates the remaining loss and damage at approximately $34,771.80, subject to the evidence supporting individual items, valuation, applicable law, and any additional credits required by the Court.

134.Plaintiff will provide a detailed damages schedule and supporting documentation as required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any applicable scheduling order.

## XI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor against the Defendant or Defendants determined to be legally responsible under the Carmack Amendment, including Armstrong and Coleman to the extent established by the evidence and applicable law;

B. Determine that Armstrong and/or Coleman are legally responsible under the Carmack Amendment for loss, destruction, and damage occurring while Plaintiff's household goods were within their respective possession, custody, control, or responsibility;

C. Award Plaintiff the unpaid portion of his proven household-goods loss and damage;

D. Award damages in an amount established by the evidence, presently estimated from Plaintiff's original claim of $58,568, less the $23,560 MCO payment and the additional $236.20 recovered from the TSP, resulting in a presently estimated unpaid amount of $34,771.80;

E. Award prejudgment interest to the extent permitted by law;

F. Award taxable costs and any other relief authorized by applicable law;

G. Grant such other and further relief as the Court deems just and proper.

## XII. DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

______________________________

CAPTAIN MARK JOHNSON

Plaintiff, Pro Se

1043 Union Street

Clearwater, Florida 33755

Telephone: 757-775-0007

Email: johnsonm72@hotmail.com